*302
 
 Mr. Justice CATRON
 

 delivered the opinion of the court.
 

 Phelps recovered of Morehouse the undivided moiety of lots Nos. 8 'and 9 in the town of Galena, in a State Circuit Courl in Illinois, which judgment was affirmed in the Supreme Courl bf that State; and from this decision the cause is brought here on writ of error. "We are now called on to re-examine the controversy to the extent that acts of Congress, and the proceedings of officers acting under the authority of the United States, are drawn in question.
 

 Phelps claims, through a paper addressed to the agent of the United States superintending the lead mines at Fever river; and this paper his counsel assumes to be a deed that conveys lands. It bears date November 8, 1829, and is from Guyard to Phelps, for a moiety of the lots in dispute.
 

 The courts of Illinois held it to be an effective conveyance of title, and that, by force thereof, Phelps became “
 
 the legal representative”
 
 of Guyard, within the intent and true construction of the patents made to the representatives of Guyard and .Morehouse. •
 

 The act-of 1886 required that commissioners should
 
 hear
 
 and
 
 determine
 
 all claims to lots of which a preference of entry was sought, according to the act of 1829; they had power conferreu on them to administer oaths and take evidence, and weiv directed to reduce it to writing, in support of claims to pre emptions presented for consideration; and, when all the test irnony was beard and considered, they were to file with tli6 register ánd receiver the whole testimony in the-case, (that is, in- all the instances,) together with a certificate in favor of each person having the right of pre-emption; and on payment being made to the receiver by the p,erson' ascertained to .be entitled, the register was ordered to issue a certificate of purchase to him to whom the right of pre-emption had been adjudged; and the remaining lpts were to be exposed to public sale.
 

 it was-the political power that was dealing with this property. Congress could award it either for a consideration, or confer it on any. one that they desired should have it. The awards were made through a tribunal exercising the political power, and whose adjudications were conclusive of the right
 
 *303
 
 to purchase; nor had the courts of justice.any jurisdiction to interfere.
 

 Phelps did not come forward and prefer a claim to have a pre-emption allowed, and if Morehouse had not acquired this right, the land would have been sold at auction; Phelps would have then stood in the situation of all others claiming prefer- ■ enees of entry throughout the public domain, who fail to prove up their claims before the register and receiver, and .permit the land to be sold at the public sales.. He abandoned his preference, and allowed it to be
 
 forfeited
 
 — even conceding its • original validity.
 

 2. If Phelps has a legal title, he took it by the terms of the patents. The patent for No. 9 recites, that the legal representatives of Robert P. Guyard and Dickerson B. Morehouse had deposited in the General Land Office the register’s certificate at the land office at Galena; that full payment had been made, by said legal representatives above named, for lot-No. 9, (the boundary of which is described,) and which lot had been purchased by said representatives of Guyard and Morehouse; and, in consideration of the premises, the United States have given and granted, and do give and grant, “ unto the said representatives of Guyard and Morehouse, and to their heirs, the said lot above described; to have and to hold, unto the said representatives, and their heirs and assigns, forever, as tenants in common.” The patent for lot No. 8 is in the same terms.
 

 For the purpose of explaining who the grantees are, and that they were the purchasers, extrinsic proof was introduced in the átate Circuit Court, to the end of establishing the fact that Morehouse, as administrator of Guyard, and on his own behalf, proved the joint occupancy of lots 8 and 9 before the commissioners appointed to grant certificates of pre-emption under the act of 1836; that Morehouse obtained certificates of preemption, filed them with the register, paid the purchase-money to the receiver of the land office at Galena, took out his patent certificates, presented them at the General Land Office, and received the patents. The deed to Phelps was produced and recorded at Galena, June 18, 1847. Morehouse obtained his pre-emption certificates for lots Nos. 8 and 9, paid his money
 
 *304
 
 for them, and got his patent certificate February 20,1838, and on the 1st day of January, 1846, the patents issued. ,
 

 We feel confident, from the face of the patents, that they were made for the benefit of those who obtained the certificate of pre-emption, and paid for the land. Such, in our judgment, is the fair construction of the patents, and of the second section of the act of 1836, on which they are founded. The patents, throughout, refer to those who bring the claim before the board, obtain the right of entry, pay the purchase-money, and enter the land.
 

 It was the duty of Morehouse, as administrator of-Guyard, to make payment for the moiety of the lots Nos. 8 and 9, on behalf of the estate of Guyard, out of the personal property in the administrator’s hands. (Revised Statutes' of Illinois, title Wills, sec. 107; adopted in 1836.)
 

 And by the 98th and 99th sections of said title, the administrator was empowered to convert the lands into personal assets for the payment of debts; the'personal estate having proved insufficient.
 

 ' The. capacity of Morehouse to cause the entry to be made, depends on State laws, with which we have no power to deal in the present writ of error, further than to ascertain from them that Morehouse was, in his capacity of administrator, “the legal representative” of Guyard; and such we think he was, and that the patents are technically accurate.
 

 As Phelps was plaintiff in the ejectment suit, andL More-house in possession, it was imposed on Phelps to show a valid legal title to authorize a recovery of the land by him; and having no such title, Morehouse’s possession was sufficient for his protection.
 

 The decisions referred to on behalf of the defendant in error, where Spanish claims had been confirmed, and where the United States gave an additional sanction to an incipient title existing when we acquired Louisiana, do not apply. In those cases, titles which were undoubtedly private property, that could be alienated, and which descended, were examined, and their validity ascertained; and when found meritorious, ordered to be defined by survey, and a United States patent was
 
 *305
 
 in most cases ordered to be issued. But this did not defeat outstanding interests in tbe land for which the patent issued; as was held in the cases of Stoddart
 
 v.
 
 Chambers, Russell
 
 v.
 
 Penrose, and Landes
 
 v.
 
 Brant. The patent covered the whole title; at least, from the time it was asserted beforfe a board of commissioners appointed by Congress to investigate the claim; and the patent inured to the protection of alienees and heirs. The United States Government was bound to protect existing interests in the lands acquired by the United States from Prance, by the treaty of 1803.
 

 Here, however, a very different claim to the lands in the tovra of Galena is set up. ' The Government was-the absolute owner; Congress might have repealed the acts of 1829 and 1836, at any time before actual purchases were made 'by those claiming a preference to enter, and the lands have been sold at auction. Up to the date of the entry .and purchase, the title was in the United States; behind which date the. courts of justice can uphold no deed.of conveyance of the public lands, unless Congress has authorized assignments of occupant claims to be made; and as the acts of. 1829 and 1836 awarded the preference of entry to the claimant who applied, and obtainéd, the favorable decision of the board of commissioners, no inquiry can be made into -the dealings between Phelps and Guyard.
 

 It is ordered that the judgment of the Supreme Court of Illinois be reversed, and that the cause be remanded, to be proceeded in according to this opinion.